FILED
UNITED STATES DISTRICT COURT
ALBUQUERQUE, NEW MEXICO

JAN 2 2 2004

Robert M. March
CLERK

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

STEPHAN CHARLES LOPEZ,

Applicant,

v.

No. CIV 03-989 BB/LFG
No. CR 01-526 BB

PATRICK SNEDEKER, and
PATRICIA MADRID, Attorney General
of the State of New Mexico, and
UNITED STATES OF AMERICA,

Respondents.

## MAGISTRATE JUDGE'S FINDINGS AND RECOMMENDED DISPOSITION[1]

### Findings

1. On August 25, 2003, Stephan Charles Lopez ("Lopez") filed this petition for writ of habeas corpus under 28 U.S.C. § 2254,[2] naming only state authorities as Respondents (Mr. Snedeker and Ms. Madrid). [Doc. 1]. On September 29, 2003, the State Respondents filed an Answer [Doc. 11], and argued, *inter alia*, that Lopez had not exhausted his claims in state court. The State Respondents also argued that because Lopez's application concerned the execution of both state and

---

[1] Within ten (10) days after a party is served with a copy of these amended findings and recommendations, that party may, pursuant to 28 U.S.C. § 636(b)(1), file written objections to such findings and recommendations. A party must file any objections with the Clerk of the U.S. District Court within the ten-day period allowed if that party wants to have appellate review of the findings and recommendations. If no objections are filed, no appellate review will be allowed.

[2] The § 2254 application was re-characterized as one being brought under 28 U.S.C. § 2241 since Lopez challenges the execution of his federal and State sentences rather than their validity.

1

federal sentences, the United States was an appropriate party to the action. [Doc. 11, ¶ 7.] On October 20, 2003, Lopez filed a response to the State Respondents' Answer [Doc. 12]. On November 4, 2003, the Court *sua sponte* entered an Order adding the United States of America as a named Respondent and directed the federal government to file an Answer to Lopez' application. [Doc. 13.] On December 22, 2003, Respondent United States filed its Answer, and on January 5, Lopez filed a response to the "federal and state answer (sic)". [Docs. 16, 17.]

2. On September 10, 2001, Lopez was sentenced by a United States District Court Judge to a term of 108 months' incarceration in relation to a felony firearm possession. On September 25, 2001, Lopez was sentenced by a New Mexico State District Court Judge to approximately 66 months for involuntary manslaughter, unlawful taking of a motor vehicle and possession of a controlled substance. The state court judgment expressly provides that all counts shall run concurrently with the sentence in the federal cause number and that the state court sentence shall be satisfied by the 108 month federal sentence. [Doc. 11, Ex. G.] Lopez has been and currently is confined at the Lea County Corrections Facility in Hobbs, New Mexico.

3. Lopez's § 2254 application argues that his sentences are not running concurrently as directed by the state court judgement. Lopez is currently incarcerated in a state facility and has not begun to serve his federal sentence. He claims that he received telephonic information from the United States Marshal that his sentences are not being run concurrently, as contemplated by the state court judgment.

4. In their Answer, the State Respondents agree with most of Lopez' procedural recitations but deny that Lopez exhausted his state remedies. The State Respondents note that Lopez' request for credit against his federal sentence for the time served under his state sentence may

2

have merit, but that the proper party to award such credit is the United States Bureau of Prisons ("BOP"). [Doc. 11, ¶ 6.] The State also explains that Lopez could seek to have the State remand him to federal custody, at which point Lopez could then pursue any relief that is available in the administrative and judicial fora of New Mexico. Because Lopez did not name the United States as a Respondent, the State also claims that Lopez failed to state a cognizable claim under § 2254.

5. In the United States' Answer, the government similarly argues that Lopez' habeas application should be denied because Lopez has not exhausted the administrative remedies available through the BOP and also that this Court lacks jurisdiction over Lopez' habeas application. The United States explains that the determination of whether Lopez' federal and state sentences will be served concurrently falls within the authority of the BOP in accordance with 18 U.S.C. § 3621(b). According to the United States, it is the Attorney General or the BOP, not the federal sentencing court, that has the authority to order concurrency. [Doc. No. 16.]

## Underlying Chronology

6. This chronology is provided, for the most part, by the United States in its Answer and attachments, and does not appear to be in dispute. The State of New Mexico was the first authority to arrest Lopez in relation to charges of involuntary manslaughter, unlawful taking of a motor vehicle, and possession of a controlled substance. [Doc. No. 16.] Subsequently, while Lopez was incarcerated on the state charges and awaiting state prosecution, the federal government filed an Information charging Lopez with being a felon in possession of a firearm, apparently arising out of the same conduct for which he had been arrested by the state authorities, at least with respect to the charges of unlawful taking of a motor vehicle and possession of narcotics. [Id.]

7. The federal government obtained a writ of habeas corpus *ad prosequendum* directing Lopez' state custodian to release him to the United States Marshal for Lopez' presentation at a plea hearing. The writ specified that Lopez would remain the Marshal's custody until the conclusion of the federal prosecution, which could include federal sentencing. On September 10, 2001, the federal court sentenced Lopez to a term of incarceration of 108 months in the custody of the BOP, followed by a term of supervised release. United States District Judge Bruce Black recommended that Lopez serve his sentence in a federal correctional institution offering a 500-hour drug program. The transcript of the federal sentencing indicates that the state charges were briefly alluded to by Lopez' attorney (who represented Lopez in both matters), but the federal court sentenced Lopez before Lopez was sentenced by the State, and there were no specific references to the pending state charges either in his federal plea agreement or by the federal court in the sentencing transcript. [Doc. No. 11, Exs. A (federal Plea Agreement); B (federal Sentencing Judgment); C (transcript of Federal sentencing)].

8. On September 10, 2001, the U.S. Marshall returned Lopez to state custody in accordance with the terms of the federal writ. The government notes that in the interim, the State obtained a writ of habeas corpus *ad prosequendum* to return Lopez to state custody to continue facing the pending state prosecution. According to the government, the State's subsequent writ was unnecessary because by the terms of the federal writ, Lopez would have been returned after his federal sentencing. [Doc. No. 16.]

9. On September 25, 2001, State Court Judge Neil C. Candelaria of the Second Judicial District for the State of New Mexico sentenced Lopez in accordance with a guilty plea under Alford

4

v. North Carolina to the offenses of involuntary manslaughter, unlawful taking of a motor vehicle, and possession of a controlled substance.

10.     On October 9, 2001, the state court entered Lopez' Judgment, Sentence and Commitment to Department of Corrections. [Doc. No. 16, Ex. B.] Judge Candelaria sentenced Lopez to the custody of the State Corrections Department for a term of incarceration of 66 months. "All counts shall run concurrently with each other and shall run concurrently with the sentence in Federal Cause Number 1:01 CR 00526-001BB. This sentence shall be satisfied by the 108 month Federal sentence mentioned previously." [Id., ¶ 3.] The state court judge further ordered that Lopez' two year parole term would be satisfied by the 108 month federal sentence in the federal case and then commanded the State Corrections Department to take Lopez into custody. [Doc. No. 16, p. 2-3.]

11.     It appears that while Lopez has been serving his sentence in a state facility, he had expected, after his state sentencing, to be returned to a federal facility and that the time spent in federal custody would then satisfy his state sentence. At some point, perhaps in 2004, Lopez will complete his state sentence and presumably will be transferred to a federal facility to serve his federal sentence. The question then is whether Lopez will be entitled to or given credit against his federal sentence for any time spent in the state facility. This Court previously noted that the ultimate result of Lopez' incarceration in a state facility could be to deprive him of the concurrent-sentences ruling by the State Judge and could undermine the basis for his plea in the state proceedings. [Doc. No. 13, Nov. 4, 2003 Order.]

12.     The United States argues that Lopez has methods available to him, including a request to the BOP that it calculate his federal term of incarceration as being served concurrently with the

State sentence he currently is serving and/or a request that the State (through Court Order or Department of Corrections referral) submit a request to the BOP recommending concurrent state and federal sentences. According to the United States, such requests typically are made by the DA's office that prosecuted the state charges. [Doc. No. 16, pp. 5-6.] In addition or alternatively, Lopez could request a *nunc pro tunc*[3] designation by BOP in accordance with BOP Program Statement 5160.05. Apparently, Lopez has pursued neither of these options. In his response, Lopez argues only that the Respondents' argument as to exhaustion is moot because he is in state custody where he cannot obtain BOP policies and also because he believes that the federal court has the authority to order that both sentences run concurrently. [Doc. No. 17.]

## Analysis

### Exhaustion: § 2254 and § 2241 Petitions

13. Although Lopez identified his federal habeas petition as a § 2254 petition, it actually is a § 2241 petition. Challenges to the implementation of a sentence rather than to the basis for the sentence should be brought under § 2241. Montez v. McKinna, 208 F.3d 862, 865 (10th Cir. 2000). It makes little difference with respect to the issue of exhaustion since that rule is applied in the same manner to both § 2241 or § 2254 petitions. Id. at 866. *See also* Kokinda v. Saffle, 2002 WL 120541 at *1, n. 2. (10th Cir. Jan. 30, 2002) (Oklahoma procedural default rules apply equally to § 2241 or § 2254 petitions).

14. "The exhaustion requirement is satisfied if the issues have been 'properly presented to the highest state court, either by direct review of the conviction or in a postconviction attack.'"

---

[3] *Nunc pro tunc* is a Latin phrase that "describes a doctrine that permits acts to be done after the time they should have been done with a retroactive effect – a Latin term meaning literally, 'now for then.'" Barden v. Keohane, 921 F.2d 476, 478 n. 2 (3d Cir. 1990).

Brown v. Shanks, 185 F.3d 1122, 1124 (10th Cir. 1999) (*quoting* Dever v. Kansas State Penitentiary, 36 F.3d 1531, 1534 (10th cir. 1994)). "An exception is made only if there is no opportunity to obtain redress in state court or if the corrective process is so clearly deficient as to render futile any effort to obtain relief." Beavers v. Saffle, 216 F.3d 918, 924 n. 3 (10th Cir. 2000) (*quoting* Duckworth v. Serrano, 454 U.S. 1, 3 (1981) (*per curiam*), and *citing* 28 U.S.C. § 2254(b)(1)(B))."

15.  A district court has jurisdiction under 28 U.S.C. § 2241 to review the computation of a sentence only after the prisoner has exhausted administrative remedies before the BOP. United States v. Wilson, 503 U.S. 329, 335-36 (1992); *see also* Bennett v. United States Parole Comm'n, 83 F.3d 324, 328 (10th Cir.), *cert. denied*, 518 U.S. 1012 (1996). The United States Attorney General, through the BOP, has the responsibility of administering a federal sentence. *See* United States v. Jenkins, 38 F.3d 1143, 1144 (10th Cir. 1994) ("only the Attorney General through the Bureau of Prisons has the power to grant sentence credit").

16.  The sovereign that first acquires custody of a defendant in a criminal case determines whether jurisdiction and custody of that defendant shall be retained or surrendered. Weekes v. Fleming, 301 F.3d 1175, 1180 (10th Cir. 2002), *cert. denied*, 537 U.S. 1146 (2003). Here, the State of New Mexico was the first sovereign to acquire custody of Lopez as the State arrested him first and held him in custody before the federal government obtained custody over him through a writ. Although Lopez appeared in federal court pursuant to a writ on the federal gun charge, New Mexico still retained first and primary custody of him. Weekes, 301 F.3d at 1180; Franklin v. United States, 72 Fed. Appx. 736, 738, 2003 WL 21540921 at *2 (10th Cir. July 9, 2003).

17.  In Franklin, some of the underlying facts are almost identical to those here. Franklin was being held on state charges when the United States indicted him on federal drug charges.

7

Franklin appeared in federal court on the drug charges pursuant to a writ of habeas corpus *ad prosequendum*. After he pleaded guilty, the federal court sentenced him to a period of 120 months incarceration, and federal authorities then returned him to state custody. In state court, Franklin plead guilty to state charges and was sentenced on that conviction, with the specification that his state sentence run concurrently with the federal sentence. Franklin remained, however, in state custody. He was transferred to federal custody only after serving the state sentence. His § 2241 petition challenged the refusal to credit the state time he served against his federal sentence. Franklin, 72 Fed. App. at 738, 2003 WL 21540921 at *1. Although the decision is not entirely clear, it appears that the Tenth Circuit found Franklin's claim lacked merit on the basis of his failure to exhaust (as well as because he filed the petition in the wrong federal court). Id. at *2.

18.   Lopez argues that the federal sentencing court has the authority to order concurrency of state and federal sentences in cases such as his. That is not true here. Under the facts of this case and present posture, the federal sentencing court does not have the power to order concurrent sentences after the fact and in a situation where the federal court sentenced an individual before the State sentenced him. Instead, only the Attorney General or BOP has such authority. *See* Barden v. Keohane, 921 F.2d 476, 483 (3d Cir. 1990) (discussing a similar procedural scenario).[4] This is not

---

[4] In Barden, the Third Circuit, under somewhat similar circumstances, remanded a petitioner's case to the district court so that the court, in turn, could remand the matter to the BOP for a prompt review of the prisoner's claim and a decision as to whether to grant or deny it in accordance with the BOP's broad discretion as provided by 18 U.S.C. § 4082(b). In Barden, the Circuit Court agreed with the petitioner that the federal government had the statutory authority to make the *nunc pro tunc* designation requested by the petitioner, i.e., that the federal authorities could exercise their power to designate the state prison as the place for him to serve his federal sentence. Barden, 921 F.2d 477-78. Barden is not binding on this Court. In addition, it is distinguishable in several significant ways. First, at the time inmate Barden apparently filed his habeas petition in federal court, he had completed his state sentence and was serving his federal sentence in a federal facility. In addition, he had exhausted his administrative remedies with the BOP, and the BOP had apparently refused to "consider his plight" or to acknowledge it had the authority to grant the petitioner's request. Id. at 478, 479, 482.

to say the federal sentencing court lacked authority to order concurrency had Lopez already been sentenced by the state court before he was sentenced in federal court. However, that did not occur here. And at this point, the federal sentencing court simply does not have the authority Lopez wishes it had. Moreover, neither the federal court nor the BOP is bound by a state court's direction that the state and federal sentences run concurrently. Id. at 478 n. 4. However, it is true that Lopez may, at some point, be entitled to a writ to compel the BOP to consider his request and review his case. Even so, this does not mean that the BOP will exercise its discretion favorably in relation to Lopez since its determination on the question will depend on many different factors. Id. at 478.

19.     Here, Lopez has not exhausted his administrative remedies, nor does he argue that he has. In his response to the State's Answer, he states merely that he "makes no argument . . . as to unexhaustable (sic) claims in state court." [Doc. No. 12.] Lopez next asserts that he does not have to exhaust his administrative remedies due to his mistaken belief that after sentencing, the state authorities were required to return Lopez to federal custody. Similarly, in his response to the United States' Answer, Lopez states that because he is in state custody, he unable to obtain the BOP policies that might allow him to make a request for review to the BOP. He never claims, however, that he attempted to exhaust his administrative remedies or that such a request was denied.[5]

20.     In addition to the fact that Lopez has not exhausted his administrative remedies, which he must do before filing his § 2241 petition, the claims he asserts are not ripe for similar reasons. "[P]etitioner's request for credit against his federal sentence must first be presented to the Bureau of Prisons before it is ripe for adjudication here." *See* Delima v. United States, 41 F. Supp. 2d 359 (E.D.N.Y. 1999), *aff'd* 213 F.3d 625 (2d Cir. 2000).

---

[5]The United States attached to its Answer [Doc. No. 16] some of the pertinent BOP policies.

9

## Recommended Disposition

That Lopez' § 2241 petition [doc. 1] be denied, and that all of his claims be dismissed, without prejudice, for failure to exhaust and lack of ripeness.

*Lorenzo F. Garcia*
Lorenzo F. Garcia
Chief United States Magistrate Judge